```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF MINNESOTA
                    09-CR-47(JMR/JJK)
```

United States of America     )
                             )
          v.                 )          ORDER
                             )
Daniel Martin Barrera-Omana  )

This matter is before the Court on the government's motion for revocation of release. On July 9, 2009, the Honorable Jeffrey J. Keyes, United States Magistrate Judge, granted defendant's motion for reconsideration of presumptive detention. The Magistrate ordered defendant released, but stayed his order for seven days [Docket No. 41]. This Court extended the stay until a hearing could be held on this matter. The government asks the Court to detain defendant pending trial.

A hearing was held on July 22, 2009, at which neither party offered evidence, standing on the facts set forth in the Magistrate's Order. The decision whether or not to release defendant pending plea or trial turns on his availability to this Court, a question more complex than it may first appear.

The Court declines to modify the Magistrate's Release Order.

I. Background

Defendant was born in Morales, Mexico. When he was five, his mother illegally entered the United States with him and his sister. The family settled in Minneapolis, Minnesota, where they have

resided ever since. They are not naturalized citizens. Defendant attended public schools in Minnesota, and stated he earned his GED. For the past five years, defendant has been in a relationship with an American citizen,[1] but has resided with his sister in Minneapolis.

On February 19, 2009, a grand jury returned a one-count indictment charging defendant and his sister with possession with intent to distribute approximately one kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2.

A number of magistrate judges dealt with defendant prior to his appearance before the undersigned. At the February 26, 2009, initial appearance, the Honorable Franklin L. Noel, United States Magistrate Judge, ordered defendant temporarily detained. On March 2, 2009, the Honorable Susan R. Nelson, United States Magistrate Judge, held a detention hearing. Pretrial services had not yet interviewed defendant.[2] Absent an interview, pretrial services suggested defendant was a flight risk and a danger to the

---

[1] The Magistrate Judge performed a marriage ceremony for defendant and his fiancee prior to the July 9, 2009, hearing. The Court affords no weight to this event in considering release. The Court will not consider the actions of an Officer of this Court as a factor in defendant's suitability for release.

[2] Defendant's then-counsel advised him against speaking to the pretrial services officer. His present counsel advises him to the contrary. Pretrial services has now conducted its interview.

2

community.[3]  Magistrate Nelson noted an Immigration and Customs Enforcement ("ICE") detainer placed against defendant and concluded "that no condition or combination of conditions of release will reasonably assure the appearance of Defendant as required, or the safety of the community."  [Docket No. 8.]

On April 24, 2009, defendant's sister - facing the identical charge on the same indictment - was released on bond.  For reasons entirely unknown to this Court, ICE has not placed a detainer on her.

Defendant's motion for reconsideration was heard by Magistrate Keyes on July 9, 2009.  The Magistrate determined defendant's virtually life-long ties to the Minneapolis community meant he did not represent a flight risk or danger to the community.  The government appeals.

At oral argument, the government argued defendant represents a risk of danger to the community, and he presents a significant risk of non-appearance if released.  The prosecutor was fair in saying that if defendant did not have an ICE detainer, he would likely be released in this District.  Defendant has no prior adult criminal history.  He apparently had a firearm charge as a 17 year-

---

[3] According to defendant, the initial bond report listed a "pending felony drug case in Ramsey County, Minnesota."  The parties now recognize this was not a separate offense.  It was, in fact, the State's original charge against the defendant.  The Ramsey County case has now been dismissed because of the federal indictment.

3

old juvenile; there was no reference to this fact at oral argument. Certainly, defendant has been charged with a presumptive detention drug quantity, but such defendants are not infrequently released, as was recognized during oral argument.

The ICE detainer is the problem. The essence of the government's argument is that defendant is an illegal alien not permitted to work in the United States. This means that, as a result of ICE's detainer, if the Court releases him, "he will be arrested by ICE and in all probability will be removed to Mexico." (Gov.'s Mot. 5.) This means an agency of the United States will remove defendant from Minnesota. This risk of ICE's removal, according to the government, is the reason defendant must be detained.

II. Discussion

This Court reviews a magistrate's detention order de novo. United States v. Maull, 773 F.2d 1479, 1482 (8th Cir. 1985). The Eighth Circuit Court of Appeals recognizes "either danger to the community or risk of flight is sufficient to authorize detention." United States v. Sazenski, 806 F.2d 846, 848 (8th Cir. 1986). Where, as here, the indictment charges a violation of the Controlled Substances Act, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e).

4

Congress has explicitly instructed the Court concerning the factors used in "determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). A court must "take into account all available information," including the nature and circumstances of the offense, the weight of the evidence against the person, the person's history and characteristics, and the nature and seriousness of the danger to any person or the community posed by the person's release. Id. Congress has not, of course, told a court to consider the existence of an ICE detainer among these factors.[4] In this sense, the Court finds the ICE detainer is an externality not under defendant's control. As such, it must be excluded from the detention analytic.

Applying these factors, defendant has clearly rebutted the idea that no combination of conditions will assure his appearance and the safety of his community. See United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003) ("In a presumption case such as this, a defendant bears a limited burden of production - not a burden of persuasion - to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of

---

[4] The government argued that consideration of an ICE detainer is not barred, either. This argument proves vastly too much. A court is not, after all, forbidden from considering a defendant's height, weight, eye color, or a million other things.

5

flight.").

This defendant, who cannot - at the age of five - have been the moving factor in an illegal entry into the United States, has lived in Minneapolis, Minnesota, since that time. His sister and partner both live in Minneapolis. There is no evidence suggesting he has any ties to Mexico.

The government, however, complains it needs protection from ICE and its threat of expulsion. Under 8 U.S.C. § 1226(c)(1)(A), according to the government, ICE had no choice but to issue a detainer. The Department of Homeland Security, ICE's parent, reads the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678, 701 (2001), to mean ICE cannot permit one of its detainees to remain in detention any longer than necessary to determine "that there is no significant likelihood of removal in the reasonably foreseeable future."

In fine, the government argues that any defendant encumbered by an ICE detainer must be detained pending trial or sentence. This cannot be. See United States v. Delker, 757 F.2d 1390, 1399 (8th Cir. 1988) ("[T]he characteristics that will support pretrial detention may vary considerably in each case, and thus Congress has chosen to leave the resolution of this question . . . to the sound discretion of the court's acting on a case-by-case basis.") (quotations omitted). If the Court accepted the government's argument, Congress's carefully crafted detention plan, set forth at

18 U.S.C. § 3142, would simply be overruled by an ICE detainer. No other factor matters; neither danger to the community nor risk of flight, nor any kind of individualized consideration of a person before the Court. Each, according to the government, has been swallowed by an ICE detainer.

Although Congress carefully imposed a rebuttable flight presumption in cases involving the Controlled Substances Act with a maximum term of imprisonment of over ten years, legislative history indicates the presumption is based on a fear that drug dealers will have resources to escape the country. Congress did not enact this presumption out of fear that the Republic's own agencies would deport criminal defendants pending trial. See United States v. Arndt, 329 F. Supp. 2d 182, 186 n.6 (D. Mass. 2004) ("The presumption reflects Congressional findings that persons who deal in drugs often have the necessary resources and foreign ties to escape to other countries."). The Court must conclude that the risk of flight with which Congress was concerned was not a flight flown or paid for by a federal governmental agency.

The risk of nonappearance referenced in 18 U.S.C. § 3142 has to involve an element of volition. At least one district court argues that a risk of non-appearance under § 3142 means defendant "would fail to appear by virtue of his own volition, actions and will." United States v. Montoya-Vasquez, No.4:08-cr-3174, 2009 U.S. Dist. LEXIS 2148, at *13 (D. Neb. Jan. 13, 2009). In support

of this claim, the court cited 18 U.S.C. § 3146, which prescribes penalties for one who "fails to appear," and states that "[i]t is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances . . . ." Id. at *12 (citing 18 U.S.C. § 3146(c)). Assuming that "failure to appear" as used in § 3146 is similar to § 3142, the court concluded "[I]f the government – through ICE or any other authority – prevents [defendant's] appearance, he has not 'failed' to appear." Id. at *14.

The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles. The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and individualized basis. This Court ought not run interference for the prosecuting arm of the government.

III. Conclusion

While the defendant's illegal status must be considered, the mere presence of an ICE detainer is not a determining detention factor. Absent this detainer, there would be no question: the

defendant should be released pending trial.  The Court finds the ICE detainer does not sufficiently change this calculus.  Accordingly, the Court Orders defendant released pending trial, under the conditions set forth in the Magistrate's Order dated July 9, 2009.

    IT IS SO ORDERED.

Dated:  July 23, 2009

                                                  <u>s/James M. Rosenbaum</u>
                                                  JAMES M. ROSENBAUM
                                                  United States District Judge